**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **LEON FRENKEL,** | : | |
| **Plaintiff,** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **BRUCE K. KLEIN, _et al._,** | : | |
| **Defendants.** | : | **No. 14-2275** |
| | : | |

<u>**MEMORANDUM**</u>

**Schiller, J.**                                                                    **August 11, 2014**

Plaintiff Leon Frenkel commenced this action to enforce two promissory notes, both of which he claimed were in default, and to enforce the pledge agreements associated with the notes. Defendants Bruce K. Klein and Victory Partners, Inc. ("VPLLC") were properly served with the summons and Complaint, but neither Defendant has appeared or otherwise defended in this action. The Clerk of Court entered default against both Defendants, and Frenkel submitted an Application for Default Judgment and a corresponding memorandum of law in support of that request. For the reasons contained herein, the Court will grant Frenkel's motion and enter default judgment against both Defendants.

**I.      BACKGROUND**

**A.      Factual Allegations**

On April 18, 2014, Frenkel filed a Complaint with this Court, asserting that he was owed payment on two promissory notes on which the borrowers had defaulted. Frenkel identifies the borrowers as Klein and VPLLC. He further asserts that Bruce Klein is the "sole member" and "alter ego" of VPLLC, a New Jersey limited liability company with its principal place of business at Klein's personal home address. (Compl. ¶¶ 1-3.)

The Complaint asserts that the first promissory note, the "VPLLC Note," was executed between Frenkel as lender and VPLLC as borrower on May 7, 2010. The VPLLC Note is "for the principal amount of $153,000, plus standard interest at the rate of 8%, payable on demand." (*Id.* ¶ 8.) On the same day, the Complaint asserts that Frenkel executed a pledge agreement ("VPLLC Note Pledge Agreement") with both VPLLC and Bruce Klein, wherein VPLLC and Klein guaranteed the VPLLC Note by pledging as collateral "400,000 shares of unrestricted and freely tradable common stock (the 'New Media Shares I') in New Media Plus, Inc." (*Id.* ¶ 16.) The Complaint does not describe the purpose of the VPLLC Note.

The Complaint further alleges that Frenkel as lender and Bruce Klein as borrower executed a second promissory note in the amount of $25,000, plus a "standard interest rate of 12%," on June 17, 2011 (the "Klein Note"). (*Id.* ¶ 32.) The Klein Note had a maturity date of October 17, 2011. Also on June 17, 2011, Klein executed a pledge agreement ("Klein Note Pledge Agreement") guaranteeing the Klein Note by pledging as collateral "100,000 additional shares of unrestricted and freely tradable common stock in New Media (the 'New Media Shares II')." (*Id.*) The Complaint also does not describe the purpose of the Klein Note.

Frenkel asserts that neither Klein nor VPLLC has paid him, despite Frenkel's numerous demands for payment. He attached to his Complaint a demand letter addressed to VPLLC and Klein, dated March 19, 2014, which demands payment on both promissory notes ("March 19 Demand Letter"). (*Id.* Exh. B.) Frenkel also asserts that Klein and/or VPLLC have not transferred any shares of New Media stock to him, despite pledging the same as collateral. The demand letter also requests that the promised shares of New Media stock be transferred to Frenkel (*Id.*) In addition to the March 19 Demand Letter, Frenkel asserts that he made

"numerous" other demand for performance under all four agreements, though he does not specify when these demands were made. (Compl. ¶¶ 10, 19, 26, 34.)

Frenkel asserts that VPLLC and Klein have defaulted on both promissory notes and failed to deliver the collateral promised by the associated pledge agreements. The Complaint contains four counts: (1) a breach of contract claim against VPLLC for defaulting on the VPLLC Note; (2) a breach of contract claim against VPLLC and Klein for failing to perform under the VPLLC Note Pledge Agreement; (3) a breach of contract claim against Klein for defaulting under the Klein Note; and (4) a breach of contract claim against Klein for failing to perform under the Klein Note Pledge Agreement. (Compl. ¶¶ 39-50.) The Complaint seeks the following damages: the principal amounts owed on the promissory notes, interest on the principal amounts owed calculated at the default interest rates listed in the promissory notes, and collection costs including reasonable attorneys' fees and costs.

**B.      Procedural History**

Frenkel filed Affidavits of Service stating that both Defendants were properly served with the summons and Complaint on May 22, 2014. At Frenkel's request, the Clerk of Court entered default against each Defendant on June 16, 2014. Frenkel then filed an Application for Default Judgment against both Defendants pursuant to Federal Rule of Civil Procedure 55(b)(1). However, because Frenkel seeks attorneys' fees and costs, this Court will construe the Application as a motion for default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2). In support of this motion, Frenkel submitted an additional memorandum of law, which includes an accounting of the attorneys' fees and costs he seeks to recover.

## II.      STANDARD OF REVIEW

Federal Rule of Civil Procedure 55(b)(2) provides that a district court may enter default judgment against a party when default has been entered by the Clerk of Court. Before entering default judgment, the court must determine that the unchallenged facts set forth in the complaint establish a legitimate cause of action, since a party in default does not admit mere conclusions of law. *Carroll v. Stettler*, Civ. A. No. 10-2262, 2012 WL 3279213, at *2 (E.D. Pa. Aug. 10, 2012); *Bricklayers & Allied Craftworkers Local 1 v. WaterControl Servs., Inc.*, Civ. A. No. 09-3935, 2012 WL 3104437, at *3 (E.D. Pa. July 30, 2012). In addition, the court must consider three factors when deciding whether to grant default judgment under Rule 55(b)(2) when a party has failed to appear: (1) prejudice to the plaintiff if default judgment is denied; (2) whether the defendant appears to have a litigable defense; and (3) whether the defendant's delay is due to culpable conduct. *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000); *see also Jimenez v. Rosenbaum-Cunningham, Inc.*, Civ. A. No. 07-1066, 2010 WL 1303449, at *3 (E.D. Pa. Mar. 31, 2010) (explaining that district courts need not analyze the factors enumerated in *Poulis v. State Farm Fire & Casualty Co.*, 747 F.2d 863 (3d Cir. 1984), when, as here, the district court is not granting a default judgment as a sanction).

## III.     DISCUSSION

### A.      The Complaint Establishes Legitimate Causes of Action

This Court must determine if the Complaint properly establishes legal claims, including the jurisdictional prerequisites for those claims. This determination includes an analysis of which substantive law to apply. First, jurisdiction in this Court is proper, as the parties are completely diverse and the amount in controversy exceeds 75,000 dollars. 28 U.S.C. § 1332. Additionally,

by executing the VPLLC Note and the Klein Note, Defendants explicitly consented to the jurisdiction of this Court and agreed that the Notes would be governed by the laws of the Commonwealth of Pennsylvania. (Compl. Exhs. A & D.) According to affidavits submitted by Plaintiff, service of the summons and Complaint on both parties was proper. Thus, this Court has jurisdiction over the case and the parties, and it will apply Pennsylvania substantive law.

The Court will now turn to the question of whether the factual allegations in each count of Frenkel's Complaint constitute legitimate causes of action, "since a party in default does not admit conclusions of law." *Labarbera v. ASTC Labs. Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010). Frenkel's Complaint asserts four counts, each for breach of a different contract. In Pennsylvania, a plaintiff asserting a breach of contract claim must allege: "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages." *McShea v. City of Phila.*, 606 Pa. 88, 97 (2010) (internal citation omitted); *see also Tuno v. NWC Warranty Corp.*, 552 F. App'x 140, 145 (3d Cir. 2014) (relying on *McShea*).

Plaintiff easily establishes the three elements of a breach of contract claim in Counts II, III, and IV. Count II asserts that VPLLC and Klein breached their duties to Frenkel to deliver the promised collateral once the VPLLC Note was in default, thereby monetarily damaging Frenkel. The pledge agreement attached to Frenkel's Complaint demonstrates both the existence of the contract and its essential terms. (Compl. Exh. C.) Count III asserts that Klein breached his duty to Frenkel to pay the amount required by the Klein Note, thereby monetarily damaging Frenkel. The promissory note attached to Frenkel's Complaint demonstrates both the existence of the contract and its essential terms. (*Id.* Exh. D.) Count IV asserts that Klein breached his duty to Frenkel to deliver the promised collateral once the Klein Note was in default, thereby monetarily

damaging Frenkel. The pledge agreement attached to Frenkel's Complaint demonstrates both the existence of the contract and its essential terms. (*Id.* Exh. E.) The factual allegations contained in Counts II, III, and IV, unchallenged and therefore accepted as true by this Court, each establish a legitimate breach of contract claim under Pennsylvania law.

Count I of Frenkel's Complaint, that Klein and VPLLC breached the VPLLC Note, is asserted against both VPLLC and Klein, though only VPLLC is a party to the VPLLC Note. Frenkel seeks to pierce VPLLC's corporate veil and hold Klein liable for VPLLC's breach as its alter ego. Count I clearly establishes a legitimate cause of action against VPLLC, a party to the VPLLC Note, because the Note is in default and Frenkel has asserted that this breach damaged him. (*See id.* Exh. A.) However, whether Count I establishes a legitimate breach of contract claim against Klein depends on whether Frenkel has asserted facts sufficient for this Court to conclude that Klein is VPLLC's alter ego.

In deciding whether to pierce the corporate veil, courts make a determination of whether the corporation is "merely a façade" for the actions of the controlling owner or shareholder. *United States v. Pisani*, 646 F.2d 83, 88 (3d Cir. 1981). Pennsylvania courts apply a totality of the circumstances test to decide whether to pierce the corporate veil, which may be done "whenever [it is] necessary to avoid injustice." *Plastipak Packaging, Inc. v. DePasquale*, 75 F. App'x 86, 88 (3d Cir. 2003). "Factors considered under Pennsylvania law . . . with respect to the alter ego theory include, but are not limited to, the following: '[T]he failure to observe corporate formalities; non-payment of dividends; insolvency of debtor corporation; siphoning the funds from corporation by dominant shareholders; non-functioning of other officers and directors; absence of corporate records; whether the corporation is a mere façade for the operations of a

common shareholder or shareholders; and gross undercapitalization.'" *E. Minerals & Chems. Co. v. Mahan*, 225 F.3d 330, 333 n.7 (3d Cir. 2000) (internal citations omitted).

Frenkel asserts that, "[u]pon information and belief, Klein is the alter ego of VPLLC." (Compl. ¶ 2.) Although the Court does not accept this legal conclusion as true, Frenkel asserts two facts which support the conclusion that Klein is VPLLC's alter ego: that Klein and VPLLC share a single residential address, and that Klein is VPLLC's sole member. (Compl. ¶ 3.) *See Craig v. Lake Asbestos of Quebec, Ltd.*, 843 F.2d 145, 148-49 (3d Cir. 1988) ("[W]hen a district court sitting in diversity applies state legal precepts to determine whether to pierce the corporate veil, the legal conclusion that it has drawn from the facts found is subject to plenary review."). Additionally, the Complaint demonstrates that Klein personally executed a pledge agreement in support of the VPLLC Note. These facts are relatively thin, but they are sufficient to state a claim for breach of contract against Klein on the theory that he is VPLLC's alter ego. *Accord Modern Technologies Grp., Inc. v. Bergman*, Civ. A. No. 05-5919, 2007 WL 2027915 (D.N.J. July 9, 2007) (piercing the corporate veil and granting default judgment against an individual defendant when the plaintiff had pled that the individual personally guaranteed the corporation's debt and took profits from the corporation); *see also Devine v. Mihok*, Civ. A. No. 08-5442, 2009 WL 1687654 (D.N.J. June 16, 2009) (piercing the corporate veil and granting default judgment against an individual defendant when the plaintiff had pled that the individual comingled his assets with the corporation's assets, that the corporation failed to maintain corporate accounting records, that the corporation was undercapitalized, and other facts relevant to the analysis).

## B.    Default Judgment Is Proper

The first factor for the Court to consider is whether Frenkel will be prejudiced if default judgment is denied. *See Chamberlain*, 210 F.3d at 164. "A plaintiff is prejudiced if denying the

default judgment would result in the loss of evidence or impair the plaintiff's ability to effectively pursue his or her claim." *Carroll*, 2012 WL 3279213, at *2. Prejudice is particularly likely where the defendants do not answer at all, and the delay threatens to stretch on indefinitely. *See Grove v. Rizzi 1857 S.P.A.*, Civ. A. No. 04-2053, 2013 WL 943283, at *2 (E.D. Pa. Mar. 12, 2013); *Carroll*, 2012 WL 3279213, at *3. In this case, Defendants did not answer or otherwise show up to defend against the charges in the Complaint. Plaintiff filed this lawsuit to recover money lent but not repaid. He asserts that repeated demands for the money have not resulted in payment, and it is unclear how Plaintiff would recover his money if not through this lawsuit. Thus, Plaintiff would be prejudiced if the default judgment were not granted.

The second factor that the Court must consider is whether the defendants have any meritorious defenses. *Chamberlain*, 210 F.3d at 164. "Courts often weigh this factor in favor of granting default judgment where a party has failed to answer claims against it." *Grove*, 2013 WL 943283, at *3; *see also E. Elec. Corp. of N.J. v. Shoemaker Constr. Co.*, 657 F. Supp. 2d 545, 553 (E.D. Pa. 2009). Because there is no way for the Court to know whether the absent Defendants have any viable defenses, the Court will also weigh this factor against Defendants.

The third factor requires the Court to consider the culpability of Defendants' conduct. *See Chamberlain*, 210 F.3d at 164. The Third Circuit has held that "willfulness" or "bad faith," but not negligence, is culpable. *Hritz v. Woma Corp.*, 732 F.2d 1178, 1183 (3d Cir. 1984). Bad faith may be presumed if a defendant offers no reason for its failure to engage in the litigation process. *See E. Elec. Corp. of N.J.*, 657 F. Supp. 2d at 554; *see also Fed. Ins. Co. v. Secure Cargo Corp.*, Civ. A. No. 12-851, 2013 WL 1222653, at *3 (D.N.J. Mar. 25, 2013). "Defendants' failure to respond permits the Court to draw an inference of culpability on their part[,]" *id.*, and this Court will draw such an inference from Defendants' absence. Because the Court infers that Defendants

engaged in culpable conduct by failing to respond to the Complaint, this factor weighs in favor of granting Plaintiff default judgment.

Based on its evaluation of the three *Chamberlain* factors, the Court will exercise its discretion to enter default judgment for Plaintiff. The Court finds that default judgment is necessary so that Plaintiff may recover what he is owed.

### C.    Damages

"Where a court enters a default judgment, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 n.6 (3d Cir. 2005). The court may calculate damages by conducting a hearing or by receiving evidence or detailed affidavits from the claimant. *E. Elec. Corp. of N.J.*, 657 F. Supp. 2d at 552; *Amresco Fin. I L.P. v. Storti*, Civ. A. No. 99-2613, 2000 WL 284203, at *2 (E.D. Pa. Mar. 13, 2000). However, where a plaintiff seeks a sum certain, no extrinsic evidence as to the amount of damages is required. *See KPS & Associates, Inc. v. Designs By FMC, Inc.*, 318 F.3d 1, 19-20 (1st Cir. 2003). "The term 'sum certain' in this context contemplates a situation in which, once liability has been established, there can be no dispute as to the amount due, as in actions on money judgments and negotiable instruments." *Id.* (internal citation omitted). Because Plaintiff seeks only the principal amounts listed in the promissory notes, plus interest calculated at the default rates contained in each of the promissory notes, this is a sum certain case and the Court may award damages for the amount specified by Plaintiff.

Frenkel asserts that he is entitled to repayment of the principal amounts promised by both promissory notes, plus interest. Having reviewed the terms of the promissory notes, the Court agrees. Both notes contained provisions setting an interest rate of 15%, from the date of each note's execution, to be imposed in case of default. (Compl. Exhs. A; D.) The VPLLC Note's

9

principal was $153,000, and the interest due as of this date is $97,836.16. The interest will continue to accrue at the rate of $62.88 *per diem*. VPLLC and Klein are jointly and severally liable for this amount. The Klein Note's principal was $25,000, and the current interest due is $11,815.07. Interest will continue to accrue at the rate of $10.27 *per diem*. Klein is liable for this amount.

### D.   Attorneys' Fees

The VPLLC Note and Klein Note each contain an explicit provision regarding attorneys' fees. The provision, which is identical in both contracts, states: "Borrower shall pay all costs of collection incurred by Lender, including without limitation, the reasonable attorney's fees and disbursements of Lender's legal representative . . . ." (*Id.* Exhs. A & D.) These costs and attorneys' fees were to be payable on demand when the principal was repaid. (*Id.*) Thus, Frenkel is clearly entitled to the costs and reasonable attorneys' fees associated with this action. Frenkel has submitted a detailed accounting of these costs and fees, and the Court must decide whether the attorneys' fees he seeks are reasonable.

Frenkel seeks a total of $14,564.00 in attorneys' fees and $577.00 in litigation costs. Because Frenkel brought one action to collect what he was owed on two promissory notes, he asks the Court to split each of these sums between the two promissory notes on a *pro rata* basis. Because the VPLLC Note represented 86% (and the Klein Note represented 14%) of the total principal sought, Frenkel seeks: (1) $12,525.04 in attorneys' fees and $496.22 in costs for enforcement of the VPLLC Note; and (2) $2,038.96 in attorneys' fees and $80.78 in costs for the enforcement of the Klein Note.

When assessing whether attorneys' fees are reasonable, courts begin by determining the number of hours reasonably spent on the litigation and a reasonable hourly rate for the work

completed. *See McKenna v. City of Phila.*, 582 F.3d 447, 455 (3d Cir. 2009). In this analysis, courts exclude hours that are "excessive, redundant, or otherwise unnecessary." *Id.* A court should also "reduce the hours claimed by the number of hours spent litigating claims on which the party did not succeed, that were distinct from the claims on which the party did succeed, and for which the fee petition inadequately documents the hours claimed." *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 178 (3d Cir. 2001); *see also Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990).

The reasonable hourly rate is calculated "according to the prevailing market rates in the community." *Smith v. Phila. Hous. Auth.*, 107 F.3d 223, 225 (3d Cir. 1997). The party seeking attorneys' fees bears the burden of producing sufficient evidence of what constitutes a reasonable market rate, which is established "with reference to the community billing rate charged by attorneys of equivalent skill and experience performing work of similar complexity." *Carey v. City of Wilkes-Barre*, 496 F. App'x 234, 236 (3d Cir. 2012). However, if a party does not submit evidence to establish a reasonable hourly rate, "the district court must exercise its discretion in fixing a reasonable hourly rate." *See Washington v. Phila. Cnty. Court of Common Pleas*, 89 F.3d 1031, 1036 (3d Cir. 1996); *see also L.J. ex rel. V.J. v. Audubon Bd. of Educ.*, 373 F. App'x 294, 297 (3d Cir. 2010).  After these considerations, a district court may consider other factors, such as the "results obtained," to adjust the award of fees upward or downward. *Hensley*, 461 U.S. at 434.

Frenkel attached a fee petition to his memorandum in support of the application for default judgment, and he also submitted a very detailed accounting of the hours spent on the litigation to this Court for *in camera* review. Frenkel asserts that his attorneys and their staff spent a total of 65.7 hours on this litigation. Though this case is ending at an early stage and was

fairly straightforward, this Court has reviewed Frenkel's attorneys' detailed records and concludes that all of the time spent on this litigation, which included significant investigation, was reasonable. The hourly rates for Frenkel's attorneys range from $210 per hour for the most junior attorney to $315 per hour for the firm's most senior attorney. The paralegal billed at a rate of $95 per hour. Though Frenkel has not submitted evidence on reasonably hourly rates in the community, this Court will exercise its discretion, based its familiarity with community rates and the level of lawyering in this action, to conclude that these rates are reasonable. *See Washington*, 89 F.3d at 1036. Thus, the requested attorneys' fees are reasonable. The requested $577.00 in litigation costs, which is mostly comprised of filing fees, is also reasonable. Frenkel is entitled to $14,564.00 in attorneys' fees and $577.00 in litigation costs.


## IV.    CONCLUSION

The Court will enter default judgment against Klein as to Counts I, II, III, and IV of the Complaint. Default judgment against VPLLC is entered as to Counts I and II of the Complaint. VPLLC and Klein are jointly and severally liable on Counts I and II for: (1) damages totaling $250,836.16 plus $62.88 *per diem*; (2) $12,525.04 in attorneys' fees; and (3) $496.22 in costs. Klein is individually liable on Counts III and IV for: (1) damages totaling $36,815.07 plus $10.27 *per diem*; (2) $2,038.96 in attorneys' fees; and (3) $80.78 in costs. An Order consistent with this Memorandum will be docketed separately.