IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LEON FRENKEL, | : | |
|     Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| BRUCE K. KLEIN, et al., | : | No. 14-2275 |
|     Defendants. | : | |

**MEMORANDUM**

**Schiller, J.**                                                                                                        **March 21, 2016**

    Leon Frenkel sued Defendants Bruce Klein and Victory Partners LLC ("VPLLC") in 2014 for breach of contract, and on August 11, 2014, this Court entered a default judgment against Defendants. More than a year later, Defendants filed a Motion to Set Aside the Default Judgment under Federal Rule of Civil Procedure 60(b)(4),[1] arguing that they had never been properly served with the Summons and Complaint. For the reasons that follow, the Court grants Defendants' motion and sets aside the default judgment.

**I.    BACKGROUND**

    **A.    Factual Allegations**

    The Complaint alleges breaches of contract stemming from two promissory notes: (1) the "VPLLC Note," which Klein's company, VPLLC, executed in favor of Frenkel on May 7, 2010, for a principal amount of $153,000; and (2) the "Klein Note," which Klein executed in favor of Frenkel on June 17, 2011 for a principal amount of $25,000. (Aug. 11, 2014 Mem. at 2.) VPLLC pledged 400,000 shares of "unrestricted and freely tradeable common stock" in New Media Plus, Inc. as collateral for the first note, and Klein pledged an additional 100,000 shares of New Media

---

[1] Defendants originally also sought to set aside the default judgment pursuant to Rule 60(b)(6), but they later abandoned this ground.

Plus, Inc. as collateral for the second note. (*Id.*) The Complaint alleges that Defendants have neither paid the amounts due on these notes nor provided the shares pledged as collateral. (*Id.*)

### B.   Procedural History

In June 2014, Frenkel filed affidavits of service stating that Defendants were properly served with the Summons and Complaint on May 22, 2014. Neither Defendant answered or otherwise responded to the Complaint. At Frenkel's request, the Clerk of Court entered default against each Defendant on June 16, 2014. After Frenkel filed an Application for Default Judgment, the Court entered default judgment under Rule 55(b)(2) on August 11, 2014. (*Id.* at 3.) The Court entered judgment against Klein and VPLLC, jointly and severally, in the amount of $263,857.42, and against Klein alone in the amount of $38,934.81. (Aug. 11, 2014 Order.)

On October 30, 2015, Defendants sought to set aside the default judgment, arguing primarily that they had not been properly served, and therefore that the judgment is void pursuant to Rule 60(b)(4). The parties have completed limited discovery on the issue of service of process, and have briefed the issue. The Court held an evidentiary hearing on January 22, 2016.

### C.   Service of Process

Frenkel's affidavits of service were executed by Morgan Kemper, a professional process server who averred that she served Klein, both individually and as an agent for VPLLC, on May 22, 2014. (Aff. of Service.) Each affidavit states that Kemper made multiple attempts to serve Klein at his Florida address, 100 Sands Point Road, Unit #303 in Longboat Key. (*Id.*) She confirmed with a maintenance man that Klein lived at that address. (*Id.*) On May 22, 2014, she knocked on the door of Klein's condo and an individual came to the door, waved his hand to tell her to go away, shook his head no, and walked back inside. (*Id.*) She loudly stated the nature of the documents and left them at the front door. (*Id.*) She recorded the following physical

2

description: "Age: 60, Sex: M, Race/Skin Color: CAUCASIAN, Height: 6'0", Weight: 210, Hair: GRAY, Glasses: N." (*Id.*)

Klein contends that Kemper did not serve him. (Mot. Set Aside Default J., Ex. 2 [Klein Decl.].) In a declaration, he stated that he was not residing at the Florida address for a period of several months before May 22, 2014, and several months after, and that he had informed Frenkel that he no longer lived there. (*Id.*) He also declared that he was not aware of the allegations in the Complaint until September 2015. (*Id.*) At the evidentiary hearing before this Court, Klein testified that he was staying at a friend's home in Brooklyn, New York from May 20 to May 22, 2014, while attending meetings at Attorney Paul Vesnaver's office. (Tr. at 33, 37.) He also testified that he is 6'7" and weighs 280 pounds, and the Court took judicial notice that he has brown hair. (*Id.* at 41–42.) On cross examination, Klein testified that his divorce attorney first informed him about the default judgment in this case in March 2015, but that he was unable to hire a lawyer until several months later. (*Id.* at 83–85.)

Two other witnesses, Paul Vesnaver and Joe Sivak, also testified that Klein was in New York during the period in question. (Tr. 10–11, 101.) Klein introduced a document that he allegedly signed at Vesnaver's New York office on May 20, 2014, as well as a FedEx label dated May 22, 2014, that Klein allegedly witnessed being sent before he returned to Florida. (Hr'g Ex. K1 [Genisis Resolution], K2 [FedEx Slip].)

Frenkel produced several documents related to Klein's divorce, which occurred around the same time period as the relevant events in this case. Klein's ex-wife's attorneys served the divorce complaint on Klein by mail at the Florida address, and, through his attorneys, he answered. (Tr. at 113.) Mrs. Klein's attorney, Christine Fitzgerald, emailed Klein's divorce attorney the Court's order entering the default judgment against Klein on November 6, 2014, and

3

Mr. Klein's attorney, Will Levins, responded that he had forwarded the document to Klein. (Hr'g Ex. K10, Ex. 13 [Fitzgerald Email], 14 [Levins Email].) Fitzgerald testified at the hearing that she had personally informed Klein of the judgment in a meeting prior to sending that email. (Tr. at 116.)

Frenkel also introduced bank records from Klein's Bank of America account and VPLLC's JP Morgan Chase account. The Bank of America records show various transactions in and around Longboat Key, FL before and after the service date, with the closest in time being an ATM withdrawal in Longboat Key on May 23, 2014. (Hr'g Ex. K10, Ex. 16 [BoA Records].) Finally, the parties deposed the process server, Morgan Kemper, but she had no recollection of serving Klein. (Hr'g Ex. K10, Ex. 3 [Kemper Dep.], at 5, 25.) She accurately identified the height and weight of one of the attorneys. (*Id.* at 9.)

## II.     STANDARD OF REVIEW

Rule 60(b)(4) allows a court to set aside a default judgment if the judgment is void. Fed. R. Civ. P. 60(b)(4). Failure to properly serve a defendant with the complaint negates personal jurisdiction and thus renders a judgment void. *United States v. One Toshiba Color Television*, 213 F.3d 147, 156 (3d Cir. 2000); *Grand Entm't Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 484 (3d Cir. 1993). If a court concludes that a judgment is void, it must set the judgment aside without considering the amount of time that has passed since the entry of judgment or other equitable factors. *Arpaio v. Dupre*, 527 F. App'x 108, 110 (3d Cir. 2013); *One Toshiba*, 213 F.3d at 157–58. In general, where there is doubt as to the resolution of a Rule 60 motion, it should be resolved in favor of the moving party so that the court can decide the case on the merits. *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194–95 (3d Cir. 1984).

**III.    DISCUSSION**

    **A.    Burden of Proof**

The Third Circuit has not resolved which party bears the burden of proof of establishing personal jurisdiction in a Rule 60(b) motion. *Arpaio*, 527 F. App'x at 113 n.4 (acknowledging that there is a circuit split but declining to address the issue). Generally, the party asserting the validity of service bears the burden of proof. *Grand Entm't Grp., Ltd.*, 988 F.2d at 488. However, several circuits use a burden-shifting framework in which a defendant who had actual notice of the proceeding prior to the entry of default judgment bears the burden of proving improper service of process. *See S.E.C. v. Internet Sols. for Bus. Inc.*, 509 F.3d 1161, 1165 (9th Cir. 2007) (collecting cases). Another circuit leaves the burden with the plaintiff. *Oldfield v. Pueblo de Bahia Lora, S.A.*, 558 F.3d 1210, 1217 (11 Cir. 2009).

This Court need not resolve the circuit split. The circuits that shift the burden to the defendant do so only when the evidence shows that the defendant had notice of the proceeding *prior* to the entry of default judgment and nonetheless delayed in asserting improper service until after judgment had been entered. *See Myers v. Moore*, Civ. A. No. 12-597, 2014 WL 7271348, at *4 (E.D. Pa. Dec. 22, 2014). Here, Frenkel has not presented evidence that Defendants actually knew about this proceeding prior to the August 11, 2014 entry of default judgment. The earliest direct evidence of Klein's knowledge of this case is Fitzgerald's testimony that she informed him of the default judgment in November 2014. (Tr. at 116.) An earlier divorce court document that Klein may or may not have seen also listed the default judgment *after* it had been entered. (Tr. at 81–83.) While Frenkel makes much of the fact that Klein knew about the judgment long before bringing this motion, he does not identify any evidence that Klein knew about the proceeding

5

prior to the entry of the default judgment. Therefore, Frenkel has the burden of proving proper service. *See Myers*, 2014 WL 7271348, at *5.

### B.  Service of Process

Federal Rule of Civil Procedure 4 allows a plaintiff to accomplish service by following state law in the state where the court is located or the state where service is made, or through one of the means listed in Rule 4(e)(2). Fed. R. Civ. P. 4(e). In this case, therefore, service was valid if it was proper under federal law, Pennsylvania law, or Florida law.

#### 1.  *Federal Rule of Civil Procedure 4(e)(2)*

Rule 4(e)(2) permits service by: "(A) delivering a copy of the summons and of the complaint to the individual personally; (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of a suitable age and discretion who resides there; or (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(e)(2). A corporation may be served by delivering the summons and complaint to an officer or other agent. Fed. R. Civ. P. 4(h)(1)(B). Here, Frenkel asserts that by delivering the papers to Klein, an officer of VPLLC, Kemper validly served both Klein and VPLLC.

In-hand delivery of the relevant papers is not a requirement for personal service under Rule 4(e)(2)(A). *Gambone v. Lite-Rock Drywall Corp.*, 124 F. App'x 78, 79 (3d Cir. 2005). "Leaving papers in the defendant's physical proximity is usually sufficient if (1) defendant actively evades service, and (2) there is clear evidence that the defendant actually received the papers at issue when allegedly served." *World Entm't Inc. v. Brown*, 487 F. App'x 758, 761 (3d Cir. 2012).

Whether Kemper properly served Klein pursuant to Rule 4(e)(2)(A) and *Brown* boils down to the identity of the person Kemper's affidavit of service describes. If it was Klein, Kemper left the papers in his physical proximity while he was evading service by refusing to identify himself and walking away. The Court could conclude from these facts that he actually received the papers she left outside the door. *See Gambone v. Lite-Rock Drywall Corp.*, Civ. A. No. 01-1071, 2003 WL 21891584, at *3 (E.D. Pa. Aug. 7, 2003), *aff'd*, 124 F. App'x 78 (3d Cir. 2005) (approving service under similar circumstances). However, if the individual at the Florida residence on May 22, 2014, was not Klein, Kemper did not leave the papers in his physical proximity and therefore did not serve him as required by Rule 4(e)(2)(A).

Overall, the Court does not find Klein's testimony to be credible. On several key points, his testimony at the hearing was inconsistent with the declaration he submitted in support of this motion and the extrinsic evidence presented by Frenkel. In his declaration, Klein stated that he "was not residing" at the Florida address for "a period of several months prior to May 22, 2014 and for several months after," despite the fact that he continued to use that address on documents and accounts. (Klein Decl. ¶ 7.) At the hearing, he clarified for the Court that during that period he spent six to seven days a month at that home, because being there was upsetting to him. (Tr. at 61–62.) During the three month period between April 1, 2014, and July 1, 2014, Klein's Bank of America records show nine transactions in Longboat Key, the town where his Florida address is located. (BoA Records.) At best, Klein's statement that he was not residing at his Florida home in early 2014 was dubious, especially given that he does not appear to have been residing anywhere else.

Klein also stated in his declaration that "he was not aware of the allegations made in Plaintiff's complaint" until September 2015. (Klein Decl. ¶ 9.) However, at the hearing he

admitted that he was aware of the existence of the default judgment as early as March 2015. (Tr. at 84.) Meanwhile, Fitzgerald testified that she spoke directly with Klein about the judgment in November 2014. (Tr. at 116.) These inconsistencies, as well as Klein's general demeanor and lack of a satisfactory explanation for his behavior during the relevant period, lead the Court to discount Klein's testimony

However, both Vesnaver and Sivak testified that Klein was in New York on the morning of May 22, 2014, when Kemper allegedly served him. (Tr. at 25, 104.) The Court has no reason to question their credibility. Additionally, the only affirmative evidence of Klein's presence at the Florida address on May 22, 2014, that Frenkel puts forward is Kemper's affidavit of service. Yet Kemper was not able to verify the identity of the person who answered the door at the Florida residence. (Aff. of Service.) Instead, she included a physical description that does not match Klein. The person she described was six or seven inches shorter, seventy pounds lighter, and had a different hair color. (Tr. at 38–41.) In contrast, during her deposition Kemper accurately identified an attorney's weight and height to within five pounds and an inch. (Kemper Dep. at 9.) The inaccuracy of the description in the affidavit of service makes it impossible for the Court to conclude that Klein was the individual Kemper encountered. *See United States v. Murphy*, Civ. A. No. 99-1436, 2007 WL 2973584, (E.D.N.Y. Sept. 28, 2007) (finding that the plaintiff failed to show proper service where the descriptions in two affidavits of service were inconsistent). Frenkel has not met his burden of showing that Kemper served Klein by placing the Summons and Complaint in his physical proximity.

Frenkel argues that even if Klein was not present at the Florida address on the service date, Kemper accomplished service pursuant to Rule 4(e)(2)(B), which allows service at the defendant's dwelling upon a person of suitable age and discretion who resides there. Fed. R. Civ.

P. 4(e)(2)(B). However, Frenkel presents no evidence that the individual Kemper encountered resided at the Florida address. *See Trovarello v. McMonagle*, Civ. A. No. 97-7369, 1998 WL 800325, at *1 (E.D. Pa. Nov. 16, 1998) ("Numerous cases make clear that when service is made by leaving copies of the summons and complaint 'with some person of suitable age and discretion residing therein,' the person with whom the papers are left must actually be a resident of the defendant's home, and not merely present at the time of service."); *accord Hardy v. Kaszycki & Sons Contractors, Inc.*, 842 F. Supp. 713, 717 (S.D.N.Y. 1993); Charles Alan Wright et. al., Federal Practice and Procedure § 1096 (4th ed. 2015). Therefore, Frenkel fails to meet his burden of proving service pursuant to Rule 4(e)(2)(B).

### 2. *Pennsylvania law*

Pennsylvania Rule of Civil Procedure 402(a) permits personal service: "(1) by handing a copy to the defendant; or (2) by handing a copy (i) at the residence of the defendant to an adult member of the family with whom he resides; but if no adult member of the family is found, then to an adult person in charge of such residence." Frenkel argues that even if the person at the Florida address was not Klein, he was a person in charge of Klein's residence who was competent to accept service. *See Am. Vending Co. v. Brewington*, 432 A.2d 1032, 1036 (Pa. Super. Ct. 1981) (holding that a person who accepted service but refused to identify herself was "in charge" of the residence). However, unlike Rule 4, the plain language of the Pennsylvania rule requires that service be accomplished "by handing" the summons and complaint to the person in question, which Kemper did not do. *See Lerner v. Lerner*, 954 A.2d 1229, 1237 (Pa. Super. Ct. 2008) (noting that a return of service must specify the person who "accepted" the complaint). Therefore, Kemper did not properly serve Defendants pursuant to Pennsylvania law.

### 3. *Florida law*

Florida allows personal service "by delivering a copy of [the relevant papers] to the person to be served . . . or by leaving the copies at his or her usual place of abode with any person residing therein who is 15 years of age or older and informing the person of their contents." Fla. Stat. § 48.031(1)(a). Like federal law, Florida law does not always require hand-to-hand service. *Haney v. Olin Corp.*, 245 So. 2d 671, 673 (Fla. Dist. Ct. App. 1971). However, Florida law also mirrors the federal rule in requiring that the plaintiff provide evidence that the person who was served meets the requirements of the statute, including age and residence at the defendant's home. *See McGee v. Cook*, Civ. A. No. 09-2543, 2011 WL 1365024, at *3 (M.D. Fla. Apr. 11, 2011); *Schupak v. Hutton Hill Assocs.*, 710 So.2d 707, 708 (Fla. Dist. Ct. App. 1998). Frenkel has no evidence that the individual Kemper identified resided at Klein's Florida address, so he has not established proper service under Florida law.

**IV.  CONCLUSION**

For the foregoing reasons, the default judgment entered in this case is void for lack of proper service of process. The Court grants Defendants' motion to set aside that judgment pursuant to Rule 60(b)(4). An Order consistent with this Memorandum will be docketed separately.